Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 2/1/2018



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: )
)
PAUL SUPRAVAT CHAUDURY ) Case No.16-05574
) Chapter 13
Debtor. ) Judge Randal S. Mashburn
)

MEMORANDUM OPINION
DENYING CHAPTER 13 TRUSTEE'S OBJECTION TO DEBTOR'S
EXEMPTIONS, DENYING OBJECTION TO CONFIRMATION OF PLAN,
AND DENYING MOTION TO CONVERT TO CHAPTER 7

The Chapter 13 Trustee objects to the Debtor's exemption in an Individual Retirement Account ("IRA") because of certain pre-petition activity. If the exemption is allowed, the Debtor is permitted to protect retirement funds totaling nearly $700,000, resulting in unsecured creditors receiving a 1% distribution under the Chapter 13 plan. This is the natural result of the Debtor dedicating his disposable income to the Plan yet being able to pay only a nominal amount to unsecured claims – without dipping into the retirement money claimed as exempt.

Based on how Congress structured the law with strong protections for IRAs and other retirement funds and how the Internal Revenue Service ("IRS") has interpreted the applicable rules, the Debtor's claim of exemption in the IRA is entirely permissible. Despite the pre-petition transactions called into question by the Trustee, the exemption is valid and cannot be disallowed.

I. Overview

This matter is before the Court on the objection filed by the Chapter 13 Trustee to the Debtor's claim of an exemption in an IRA with Charles Schwab in the approximate amount of $690,000. The Trustee contends that the exemption should be disallowed because the IRA lost its eligibility as a qualified plan under applicable provisions of the Internal Revenue Code based on the Debtor's pre-petition conduct.

1

The Trustee also objects to confirmation of the Debtor's Chapter 13 plan and seeks to have the case reconverted to Chapter 7 on the same basis as the exemption objection. The Trustee contends that the plan does not satisfy Section 1325(a)(4) of the Bankruptcy Code because it does not pay creditors as much as they would receive in a Chapter 7 case. However, his "best interest of creditors objection" is tied solely to the exemption of the IRA preventing those funds from being distributed to creditors.

The Debtor proposed a plan that pays 1% to unsecured creditors. If the Debtor's exemption is disallowed, it would result in a 100% payout to unsecured creditors since the value of the IRA is more than five times the amount of his unsecured debt. In short, the decision regarding the validity of the exemption will not only govern the exemption objection but also whether the Debtor's Chapter 13 plan can be confirmed. Likewise, the Court's decision may effectively dictate the result of the motion to convert since disallowance of the exemption could make any Chapter 13 plan impossible to confirm in light of the Debtor's limited income outside of the retirement money.

One thing is clear from a review of the applicable statutes, case law, and other authority: there is no overriding bankruptcy principle at issue here. Rather, this is simply a matter of whether the Debtor's IRA is no longer a qualified account under IRS rules. If it is a qualified plan, then it does not matter how large the IRA account is or how small the distribution to unsecured creditors would be. In other words, the potential effect on unsecured creditors is irrelevant, and the Debtor either has a qualified IRA or he does not. The Court concludes that he does.

## II. Factual Background

Although the Debtor testified during the hearing on this matter, all relevant facts have been formally stipulated or are not in dispute. The Debtor, who is above the age of 59½, has been the sole owner of the Charles Schwab IRA since at least early 2016. The IRS has approved the IRA account as one that is proper as to form, but certain transactions involving the Debtor's IRA lead the Trustee to contend that the IRA lost its qualified status shortly before the bankruptcy.

On March 15, 2016, the Debtor withdrew $327,978.13 from the IRA. On that same date, the Debtor used the withdrawn funds to purchase a house

2

Case 3:16-bk-05574    Doc 77    Filed 02/01/18    Entered 02/01/18 13:01:08    Desc Main
Document      Page 2 of 11

jointly with his spouse and titled it in both of their names.[1] The real estate was never placed into the IRA or any other retirement account, but rather remained jointly titled in the names of the individuals.

About one week later, on March 21, 2016, the Debtor received approval from BankTennessee for a $252,000 mortgage based on placing a lien on the house purchased with funds contributed from the IRA. The BankTennessee loan was funded on or before May 10, 2016. On that date, the Debtor deposited $246,945 back into the same IRA from the proceeds of the mortgage loan. He subsequently paid taxes, as a retirement distribution, on the portion of the funds withdrawn from the IRA but not deposited back into the IRA.

On August 5, 2016, less than three months after the transaction involving the mortgage and deposit of funds back into the IRA, the Debtor filed a voluntary petition under Chapter 7. The Debtor's original schedules did not list the IRA nor claim an exemption. Nevertheless, the Chapter 7 Trustee became aware of the existence of the IRA and raised issues about it, prompting the Debtor to convert the bankruptcy to a Chapter 13 case.[2] The conversion order was entered on August 3, 2017. The Debtor listed the IRA on the conversion schedules, showing an account value of $691,345.55, and the Debtor claimed an exemption for the entire amount.

The Debtor has no pre-petition priority debt and has unsecured debt totaling approximately $127,700, based on the scheduled debts and proofs of

---

[1] The Trustee also argued that using funds belonging solely to the Debtor to purchase property placed jointly in the name of the Debtor and his wife could give rise to a fraudulent transfer. If the money used was exempt, as this Court finds it to be, it is difficult to see how the transfer could satisfy the requirements necessary to constitute a fraudulent transfer. However, the Court has concluded that it would be premature to make any determination regarding the potential viability of any separate avoidance action. The Trustee has raised the question merely in the context of the possible recovery of a fraudulent transfer providing additional funds that could be used to pay unsecured creditors. It is unclear whether the Trustee contends that there is any independent basis to recover an alleged fraudulent transfer or if the avoidance theory is merely an offshoot of the claim that the funds in question became non-exempt property that was then improperly converted to joint property. If the Trustee chooses to pursue any separate avoidance action despite the Court's finding that the money used was exempt, the Court will address that issue in the event a separate adversary proceeding is subsequently filed.

[2] This case is before the Court strictly based on whether the IRA remains a qualified plan and thus is subject to an allowable exemption. The failure of the Debtor to list the IRA in his original schedules was stipulated as a matter of context for how the case ended up in Chapter 13.

claim filed up to the time of the exemption hearing. Therefore, all debts would be paid in full using only a portion of the IRA, if it is not exempt.

### III. Analysis

A bankruptcy filing creates an estate containing all legal and equitable interests of a debtor in property as of the commencement of the case wherever located and by whomever held. 11 U.S.C. § 541(a). A debtor may remove certain property as a source of payment to creditors by claiming an exemption in the property. 11 U.S.C. § 522(b). Exemptions are to be construed liberally in favor of the debtor. A party objecting to a debtor's claim of exemptions "has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010).

The Trustee objects to the Debtor's claimed exemption in the IRA account because he says the entire IRA was destroyed as exemptible property when the Debtor engaged in a prohibited transaction (as defined by 26 U.S.C. § 408 and 26 U.S.C. § 4975) by "borrowing" funds from the account to purchase a home. More specifically, the Trustee argues that, even though the Debtor is above age 59½ and repaid most all of the funds within 60 days (and paid any required taxes on the rest), the nature of the transaction transformed the otherwise qualified and exemptible IRA under 26 U.S.C. § 408 into an unqualified IRA and therefore a non-exempt asset due to a prohibited transaction under 26 U.S.C. § 4975.

The Debtor has claimed the IRA exempt pursuant to T.C.A. § 26-2-111(1)(D) and § 26-2-105(b).[3] Those provisions exempt retirement benefits that

---

[3] The very narrow issue the Court was asked to decide was whether the Debtor's actions destroyed the exempt status of the otherwise qualified IRA. However, the Debtor also argued in his brief that the distribution to the Debtor was already protected by the T.C.A. § 26-2-111(1)(D) as a distribution to the Debtor as "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service."

The purpose of the statute is to allow Tennessee citizens to exempt a portion of payments received as a replacement for lost earnings, with its application limited to retirement-type benefits such as "a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service." In making a determination as to whether the Debtor's payments fit within the scope of § 26–2–111(1)(D), the Court's focus is two-fold: whether the payments are received pursuant to one of the enumerated types of plans or contracts and whether they are "on account of death, age or length of service." *In re Vickers*, 408 B.R. 131, 138, (Bankr. E.D. Tenn. 2009).

The Court in *Vickers*, listed several factors for the Court to consider when deciding if payments were intended as retirement benefits or a replacement of income including, but not

4

meet certain specific statutory requirements. The parties are in agreement that, in the absence of the alleged prohibited transaction, the IRA was a qualified account that would fit within the exemption. In other words, the issue is not whether the IRA met the statutory requirements to be exempt, but whether the Debtor ended that status by receiving the funds from the account to purchase real estate for his benefit.

Although Tennessee has opted out of the federal exemptions provided by Section 522(d) of the Bankruptcy Code, Section 522(b)(3)(C) provides exemption rights in retirement funds for debtors in opt-out states. The net effect is that, regardless of whether a state opts in or out of the rest of the federal exemptions, retirement funds have a special exempt status under the Bankruptcy Code.

The Bankruptcy Code does not independently define what is properly exempt as a retirement fund. It simply defaults to the Internal Revenue Code. Exempt property includes any retirement funds in an account that qualifies for favorable tax treatment under specified sections of the Internal Revenue Code.[4] In short, a "qualified" IRA equals a tax exempt IRA which equals a bankruptcy exempt IRA. Of course, it is not the case that once qualified means forever qualified, and the Trustee contends that the Debtor's attempted "rollover" of funds extinguished that exempt status of his IRA account.

Section 522(b)(4) of the Bankruptcy Code directs how exemption law applies when there is a "rollover distribution" where the owner of an IRA receives a distribution and then places the money in a new IRA or returns the money to the old IRA within 60 days. Once again the Bankruptcy Code defaults to the Internal Revenue Code in defining what is a proper transaction.[5] If the

---

limited to: "Were the payments designed or intended to be a wage substitute? ... Were the contributions made over time? ... Do multiple contributors exist? ... What is the return on investment? ... What control may the Debtor exercise over the asset?" *Id.* at 139-140. Based on the stipulations, the Debtor's one-time withdrawal of funds repaid within 60 days does not support an exemption based on T.C.A. § 26-2-111(1)(D).

[4] Exempt property includes "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522(b)(3)(C).

[5] 26 U.S.C. § 408(d)(3) provides details about how a "Rollover Contribution" must be handled to avoid the rollover amount being treated as a distribution that must be included in gross income. The subsections of that provision establish the requirement that the rollover must occur within 60 days after the money is paid out, that the money must go back into an eligible retirement plan, and that the rollover can take place no more than once per year.

5

transaction does not cause the IRA to lose its favorable tax treatment, then it likewise retains its favorable exemption status.[6] The statute provides that if there is a distribution "from a fund or account that is exempt" that is then "deposited in such a fund or account" within 60 days of the withdrawal, the money does not lose its exempt status. 11 U.S.C. § 522(b)(4)(D).

The Tennessee exemption statute references Section 408 of the Internal Revenue Code, as does Section 522(b)(4)(D)(ii) of the Bankruptcy Code. The legislative history of Section 522(b)(3)(C) of the Bankruptcy Code indicates that the section was added so that states that opt out of the federal exemption scheme would be provided identical exemption rights in retirement funds for debtors. 4 COLLIER ON BANKRUPTCY ¶ 552.LH[5], at 552–131 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). It is clear from these references that distributions made pursuant to the 60–day rollover rule retain their status as exempt from the bankruptcy estate under both federal and state law.

This statutory scheme is much more straightforward than the Trustee contends. He reads into this statutory structure a host of restrictions about what can – and cannot – happen during the critical 60-day period. In fact, the Trustee's interpretation makes virtually no distinction between a transfer directly from one IRA to another retirement account versus a "distribution" and subsequent "deposit" since he contends that the only purpose of the 60-day "rollover" provision is to accommodate portability from one account to another. Under his view, any time the account holder personally benefits from the money during the rollover period, it causes the entire account to lose its qualified status.

Section 4975(c) of the Internal Revenue Code defines a prohibited transaction as any direct or indirect transaction that involves various activities between an IRA and a disqualified person -- such as buying and selling property

---

[6] 11 U.S.C. § 522(b)(4) provides:
(D)(i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.
(ii) A distribution described in this clause is an amount that—
    (I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and
    (II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

6

and loaning money.[7] "The purpose of section 4975, in part, is to prevent taxpayers involved in a qualified retirement plan from using the plan to engage in transactions for their own account that could place plan assets and income at risk of loss before retirement." *Ellis v. C.I.R.*, 106 T.C.M. (CCH) 468 (T.C. 2013), *aff'd*, 787 F.3d 1213 (8th Cir. 2015).

The Chapter 13 Trustee's position is based on misconceptions regarding both the pertinent facts and the relevant law. Factually, the Trustee's position disregards or downplays key points. First, the Debtor was above the age of 59½ and was entitled to a distribution of some or all of the money in the IRA without penalty and without needing to disguise it as a loan or engaging in an improper investment. Therefore, the argument that the Court should somehow recharacterize this transaction as a "borrowing" of money has much less appeal than it might if the Debtor were under the age of 59½ and had greater restrictions on receiving the funds without adverse tax consequences.[8]

---

[7] 26 U.S.C. § 4975(c)(1) defines a prohibited transaction as including:
(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
(B) lending of money or other extension of credit between a plan and a disqualified person;
(C) furnishing of goods, services, or facilities between a plan and a disqualified person;
(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of the plan;
(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving income or assets of the plan.

[8] The Trustee cites *In re Willis*, No. 07-11010-BKC-PGH, 2009 WL 2424548, at *9 (Bankr. S.D. Fla. Aug. 6, 2009), *aff'd sub nom. Willis v. Menotte*, No. 09-82303-CIV, 2010 WL 1408343 (S.D. Fla. Apr. 6, 2010), *aff'd sub nom. In re Willis*, 424 F. App'x 880 (11th Cir. 2011) for his argument. In that case, the court found that the debtor engaged in self-dealing, prohibited transactions nullifying the qualified status as his IRA. However, this Court finds *Willis* readily distinguishable. *Willis* involved a sophisticated individual with a background in banking and finance who used IRA funds to purchase a mortgage assignment held by a bank against a piece of real estate that was owned by an entity (Ocean One) that Mr. Willis owned that operated through a bank account of another entity that Mr. Willis owned. Mr. Willis then tried to place that mortgage assignment into his IRA as an asset, showing his intent to self-deal. Mr. Willis did not enact a rollover within 60 days and did not claim the distribution on his taxes. Mr. Willis engaged in a series of self-dealing transfers from multiple IRAs to basically "kite" rollovers in a check swapping scheme to offset stock fluctuations which indirectly benefited his brokerage account by $186,500 to the detriment of his IRA corpus. *Willis* presents quite a different scenario from a debtor who makes a permissible withdrawal from his retirement account and then properly executes a timely rollover.

7

Factually, the Trustee has offered no proof to support the idea that this was some type of disguised loan. Indeed, the Trustee signed formal, written stipulations of fact using terms that would seem to contradict the Trustee's own position. The Trustee stipulated that the Debtor "withdrew" the funds from the IRA and that the funds were "contributed" to the purchase of the real estate – not that the IRA loaned money to the Debtor or that the IRA made an investment in a house. Further, it is undisputed that the funds went to the Debtor who then used the funds for the purchase. It is likewise undisputed that the IRA did not become the title owner of the house and did not receive a mortgage on the house.

It is certainly true that the Debtor did not replace the identical money that he took out of the IRA. It is undisputed that the Debtor put the money from the IRA distribution into the purchase of a house and that he subsequently – but within 60 days – placed money borrowed from the bank from a home mortgage back into the IRA. Applicable law simply does not support the proposition that the same money that came out of the IRA has to be used for the "rollover" into an IRA within the 60-day rule.

The Trustee's legal position is based on his interpretation of 26 U.S.C. § 4975 and largely overlooks other contrary interpretations and other pertinent sections of the Internal Revenue Code and the Bankruptcy Code, as well as the most reasonable interpretation of the 60-day rollover policy.

For example, Technical Advice Memorandum ("TAM") 90100007 issued March 9, 1990, provides a clear IRS interpretation that the 60-day rollover rule is not exclusively for the portability of IRAs but instead is a once-a-year resource available to the beneficiary of the IRA. I.R.S. Tech. Adv. Mem. 90100007 (March 9, 1990). A TAM is "guidance furnished by the Office of Chief Counsel upon the request of an IRS director [ ] or an area director in response to technical or procedural questions that develop during a proceeding. While a TAM represents a final determination of the position of the IRS, it only governs the specific issue in the particular case in which the advice is issued." *https://www. irs.gov/newsroom/understanding-irs-guidance-a-brief-primer (providing IRS definition of TAM).* In this case, the specific question addressed in the TAM is directly on point:

> (3) Can an individual withdraw funds from this Individual Retirement Account (IRA) for personal use and this be considered

a rollover as long as he redeposits it back into the same or into another account at the same bank within 60 days?

The answer was unequivocally yes:

> "An individual may withdraw funds from his IRA for personal use and this may be considered a rollover as long as he redeposits it back into the same IRA or into another qualified IRA within 60 days."

There is more to support this conclusion. In a Tax Memorandum Decision, *Zaklama v. C.I.R.,* T.C. Memo. 2012-346 (2012), married taxpayers were asking the Tax Court to determine that their tax deficiencies were incorrect because they properly took withdrawals from their IRAs. In ruling on the tax consequences involved with the 60-day rule, the Court held:

> While section 408(d)(1) generally provides that any amount distributed from an IRA is treated as an item of gross income, section 408(d)(3) excepts from that provision "any amount * * * distributed out of an individual retirement account" to the beneficiary that is redeposited into an IRA of the beneficiary no later than 60 days after the day of the distribution. Respondent claims that section 408(d)(3) is inapplicable because Ms. Zaklama did not roll over the same money that she received in the distribution. We do not read that section as narrowly.

The Tax Court cites the Treasury Regulations for support. Regulation 26 C.F.R. § 1.408–4 (Treas. Reg. § 1.408–4) provides for the 60-day rule and allows the money distributed to be paid back from "the same amount of money and <u>any other property</u>." (emphasis added). Thus, the Treasury Regulations and the Tax Court's decision all support the TAM and the general proposition that what happens to the money during that 60-day period is irrelevant as long as it is repaid to the same or a different qualified account before the 60th day.

Furthermore, the IRS recognizes the flexibility of the 60–day rollover rule in various situations. Publication 590A, which is provided by the IRS to taxpayers as guidance on tax issues relating to IRAs, specifically confirms that a rollover into the same IRA is permissible under the rollover rules:

> You can withdraw, tax free, all or part of the assets from one traditional IRA if you reinvest them within 60 days in the same or another traditional IRA. Because this is a rollover, you cannot deduct the amount that you reinvest in an IRA.

I.R.S. Pub. No. 590A, Cat. No. 66302J (December 28, 2016), https://www.irs.

9

Case 3:16-bk-05574   Doc 77   Filed 02/01/18   Entered 02/01/18 13:01:08   Desc Main
Document      Page 9 of 11

gov/forms-pubs/about-publication-590a.

These IRS instructions support an interpretation of the applicable law quite different from the Trustee's approach. If the only purpose of the rollover rule is to facilitate portability from one IRA account to another IRA account, then what would be the logic of saying that someone can "reinvest" in the same IRA account from which the money was withdrawn?

In fact, the 60-day rule does not even apply to direct transfers from one IRA to another IRA or to rollovers directly from an IRA to an Employer Sponsored Retirement Plan. It only applies to direct distributions to the individual who then rolls it over into a qualified account within 60 days. The 60-day rule would be largely superfluous if it did not permit the account owner to receive the money and use it within the 60-day period without destroying the character of the IRA's exempt nature. The 60-day rule would never serve a useful purpose for the holder of the IRA if the money would automatically lose its qualified status unless the exact same funds went into another qualified account.

The Bankruptcy Court for the Eastern District of North Carolina faced a similar situation and reached the same result in *In re Rudd*, No. 12-08130-8-JRL, 2013 WL 2684541 (Bankr. E.D. N.C., June 12, 2013). In that case, the trustee likewise argued that the debtor's personal use of funds distributed from an IRA constituted a prohibited transaction and destroyed the qualified nature of the fund. Judge Leonard rejected the argument, citing much of the same authority relied upon by this Court. As the court in *Rudd* stated:

> This court reads section 522 of the Bankruptcy Code and section 408(d)(3) of the Internal Revenue Code as specifically allowing owners to withdraw funds from their IRA accounts without losing the exempt status, provided funds are redeposited within sixty days. The 60–day rollover practice was clearly recognized by Congress as evidenced by both of these code sections. The court does not find this transaction to be of the type prohibited in 26 U.S.C. § 4975(c)(1)(D).

*Id.* at *5.

Just as the *Rudd* court found that using the funds during the 60-day rollover period for personal living expenses did not destroy the exempt status, this Court finds that using the money for interim funding for the purchase of a

10

house before the home mortgage was put in place did not destroy the exempt status of the Debtor's IRA. *See also, In re Quevedo*, No. BK17-40970, 2017 WL 4773103, at *2 (Bankr. D. Neb. Oct. 20, 2017) (citation omitted) ("Here, the trustee's objection to the claim of exemption was filed within 60 days after the debtor received the proceeds of her pension plan. Had she not spent the funds, she was still within the grace period to roll them into another account, during which time they may well have retained their exempt status.").

## IV. Conclusion

The limited authority available on this topic clearly indicates that the 60-day rollover rule is not dependent on how the money was used in the interim, is not limited to merely facilitating portability from one IRA to another, and does not require that the exact same funds go back into the IRA when the rollover occurs. The overriding requirement of the rollover rule is simply that the rollover occur within the specified time period, which is what happened here.

The Trustee has asked the Court to impose additional requirements that are beyond what the law dictates. Tax and bankruptcy law is complicated enough without the Court adding a layer of restrictions and hurdles not readily apparent from the statutes. Imposing an overly expansive interpretation of what constitutes a prohibited transaction would run counter to the well-established principle that exemption issues should be liberally construed in favor of debtors.

The Trustee has failed to satisfy his burden in objecting to the exemption. In the face of a valid exemption in the IRA, the objection to confirmation of the Chapter 13 plan likewise fails. Since the exemption issue was the only justification for conversion of the case to Chapter 7, that request is also without merit. Accordingly, the Trustee's objection to the Debtor's claim of exemptions, his objection to confirmation of the Debtor's Chapter 13 plan, and his motion to convert to Chapter 7 will all be denied. A separate order reflecting this decision will be entered contemporaneously with the entry of this opinion.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.